[No. B190463. Second Dist., Div. Seven. Oct. 10, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
GUILLERMO CARDENAS, Defendant and Appellant.

COUNSEL

Robert H. Pourvali, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**JOHNSON, J.**—Guillermo Cardenas appeals from the judgment following his conviction for second degree robbery. He contends the prosecutor exercised group bias in excusing two Hispanic prospective jurors in violation of *People v. Wheeler*[1] and the trial court erred in imposing the upper term sentence based on facts not found by the jury beyond a reasonable doubt in violation of *Cunningham v. California*.[2] We find no merit to defendant's *Wheeler* contention but we conclude defendant was sentenced to the high term in violation of *Cunningham* and *People v. Black*.[3]

## FACTS AND PROCEEDINGS BELOW

A jury convicted Cardenas of robbing Cory Konopka of his wallet on the street in front of Konopka's workplace. Cardenas and Konopka had been coworkers but Cardenas had recently been fired. He believed Konopka played a role in his termination. The facts showed another person assisted Cardenas in the robbery, but this person was not a codefendant or witness in Cardenas's trial.

We concern ourselves here only with the jury selection process and the trial court's imposition of the upper term sentence. We state the facts relevant to these issues in our discussion below.

## DISCUSSION

I. *SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING TWO HISPANIC JURORS WERE NOT EXCUSED BECAUSE OF GROUP BIAS.*

A. *Factual Background—The Voir Dire.*

Because the court would be using a Spanish-language interpreter for some of the witnesses, potential jurors were questioned about their fluency in

---

[1] *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].
[2] *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856].
[3] *People v. Black* (2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (*Black II*).

Spanish and their ability to put their fluency aside and accept the translations by the interpreter.[4] Six potential jurors identified themselves as Spanish speaking. We will refer to them by letter, A through F.

### 1. *Juror A (No. 0092)*

In the opening round of voir dire the prosecutor asked Juror A what she would do if she disagreed with the interpreter's translation.

"[Prosecutor]: Do you think you would be able to just listen to what the interpreter says and not interpret for yourself?

"[Juror A]: I don't know, because I know when somebody is translating, it's not really the same thing, you know, may be fluent, so I might interpret it in my own words.

"[Prosecutor]: [Assume] you have a witness on the stand, and the witness says I was not there [and] the interpreter gets it completely wrong, and the interpreter interprets on behalf of the witness I was there, now what would you do in that particular situation?

"* * *

"[Juror A]: It's hard for me to say it, because I would probably take whatever the person is saying as far as what I understood."

Later the trial court admonished the potential jurors they could not rely on their own interpretation of a witness's testimony but "[y]ou must follow the interpretation as given by a certified interpreter." The court then asked Juror A, "Can you do that?" Juror A responded "I will try. I will do my best."

### 2. *Juror B (No. 3532)*

The prosecutor asked Juror B similar questions.

"[Prosecutor]: Will you be able to ignore the answer from the witness that's in Spanish and only listen to the English interpretation?

"* * *

"[Juror B]: Yeah. I think I would have a problem with that, because sometimes—the way, for example, in the school district if we send the wrong

---

[4] It is misconduct for a juror to rely on her own translation instead of the interpreter's translation. (*People v. Cabrera* (1991) 230 Cal.App.3d 300, 303–304 [281 Cal.Rptr. 238].)

message in a letter, it will affect the way parents read the letter, and I think it's very important, the way it's interpreted, and I don't know if I'll be able to block it.

"[Prosecutor]: Okay. Now, if the court were to admonish you that . . . you have to ignore what you heard in Spanish . . . you would be able to do that?

"[Juror B]: Yeah. I think I would. It would bother me, but I would."

After the trial court gave the admonition described above, the court asked Juror B if she could abide by its instruction. Juror B answered "Yes."

### 3. *Juror C (No. 4511)*

The prosecutor asked Juror C whether he would be able to put aside his knowledge of Spanish and consider only the interpreter's translation. He answered: "Okay. Uh-huh." After the court gave its admonition about the need to listen only to the interpreter's rendition of the witness's testimony Juror C was again asked if he could follow that instruction. He responded "Yes."

### 4. *Jurors D (No. 4185) and E (No. 3604)*

Jurors D and E expressed uncertainty about their ability to accept the interpreter's translation of the witness's Spanish testimony. They were both dismissed by the defense on peremptory challenges with no reasons given.

### 5. *Juror F (No. 0551)*

When the trial court asked if anyone else on the jury panel spoke another language, Juror F responded: "Just Spanish." No one asked Juror F any questions about accepting the interpreter's Spanish translations.

The prosecutor used her first and fourth peremptory challenges to excuse Jurors A and B. After she challenged Juror B the defense requested a sidebar and the following colloquy took place.

"[Defense counsel]: Your honor, as the court can see, the defendant is Hispanic and the People have excused . . . two Hispanics . . . .

"[The court]: You are talking about [Jurors A and B]?

"[Prosecutor]: [Jurors A and B] We have gone back and forth as to whether or not they could accept the interpretation of the Spanish speaker. Both of

them said it was hard to turn it off. [Juror C], who is still on the panel . . . indicated he would not have any problem.

"[Defense counsel]: Your honor, I note that one of the jurors said—the one that the People are trying to excuse now [Juror B], she said I could do it after the court inquired.

"[The court]: Well, the People could exercise as long as it's not related.

"[Defense counsel]: It's two Hispanics.

"[The court]: [The prosecutor] was concerned about [Juror B's] response. Initially she may not be able to follow a certified interpreter's interpretation. I know that on the later question she said that she could. The fact is the People were not comfortable with her initial response. I will find that as to [Juror A and Juror B] they were excused for cause."

As finally constituted the jury consisted of two jurors who admitted fluency in Spanish. One of them, Juror C, testified without reservation he would follow the interpreter's translation. The other, Juror F, had not been asked any questions pertaining to the interpreter.

B. *Substantial Evidence Supports the Trial Court's Finding Jurors A and B Were Not Excused on the Basis of Group Bias Against Hispanics.*

■ The rules for determining a *Wheeler* motion are well established and there is no need to repeat them all. Three of those rules are pertinent here. (1) Where, as here, the prosecutor jumps in with explanations for her challenges without waiting for the trial court to determine if a prima facie case of group bias has been established the issue of a prima facie case is moot and we proceed to the ultimate question of intentional discrimination.[5] (2) The prosecutor need only offer a genuine, group-neutral explanation reasonably related to the particular case being tried.[6] (3) Where, as here, the trial court has made a " 'sincere and reasoned attempt' " to evaluate the prosecutor's reasons for challenging a prospective juror we review the trial court's findings for substantial evidence.[7]

[5] *Hernandez v. New York* (1991) 500 U.S. 352, 359 [114 L.Ed.2d 395, 111 S.Ct. 1859]; *People v. Welch* (1999) 20 Cal.4th 701, 745–746 [85 Cal.Rptr.2d 203, 976 P.2d 754].

[6] *People v. Fuentes* (1991) 54 Cal.3d 707, 718 [286 Cal.Rptr. 792, 818 P.2d 75].

[7] *People v. McDermott* (2002) 28 Cal.4th 946, 971 [123 Cal.Rptr.2d 654, 51 P.3d 874].

■ Although the issue appears to be one of first impression in California, courts in other jurisdictions have uniformly held the fact the prosecutor distrusts a juror or finds the juror's responses not credible is a sufficiently race-neutral reason for using a peremptory challenge.[8] The United States Supreme Court's opinion in *Hernandez v. New York*[9] is directly on point. After the prosecutor used four of nine peremptory challenges to excuse Hispanic jurors Hernandez claimed the prosecution was excusing Hispanics on the basis of their race. Without waiting for a ruling on whether Hernandez had established a prima facie case of racial discrimination the prosecutor volunteered his reasons for striking the four Hispanics. Hernandez did not dispute the validity of the challenge to two of the jurors but concentrated on the removal of the other two. As to them the prosecutor stated he felt " 'very uncertain that they would be able to listen and follow the interpreter.' "[10] He explained his uncertainty was based on the facts " '[t]hey each looked away from me and said with some hesitancy that they would try, not that they could, but that they would try to follow the interpreter . . . .' "[11] The Supreme Court held "[t]he prosecutor here offered a race-neutral basis for these peremptory strikes [by dividing] potential jurors into two classes: those whose conduct during *voir dire* would persuade him they might have difficulty in accepting the translator's rendition of Spanish-language testimony and those potential jurors who gave no such reason for doubt."[12]

Thus in *Hernandez*, as in the case before us, the critical issue is whether the trial court justifiably accepted the prosecutor's race-neutral explanation as the true reason for the peremptory challenges and not a pretext for racial discrimination. In this respect there are similarities and differences between *Hernandez* and our case which we discuss below.

Initially we find the trial court made a "sincere and reasoned attempt" to evaluate the prosecutor's reasons for challenging Jurors A and B. The court

---

[8] *Hernandez v. New York, supra,* 500 U.S. at page 361; *State v. Hodge* (1999) 248 Conn. 207, 231 [726 A.2d 531, 546] ("[A] prosecutor is not bound to accept the venireperson's reassurances, but, rather, is entitled to rely on his or her own experience, judgment and intuition in such matters."); *Lynch v. State* (Miss. 2004) 877 So.2d 1254, 1276 ("[D]istrust of a potential juror is a race-neutral reason for challenging the juror."); *State v. Tucker* (La.Ct.App. 1991) 591 So.2d 1208, 1215 ("The fact that the state does not believe some of a prospective juror's answers is a racially neutral reason for exercising a peremptory challenge."); *Stephens v. State* (Ala.Crim.App. 1990) 580 So.2d 11, 20 ("[T]he fact that a prosecutor distrusts a juror or finds his responses not to be credible has also been held to be a sufficiently race-neutral reason for using a peremptory challenge.").

[9] *Hernandez v. New York, supra,* 500 U.S. at page 361.

[10] *Hernandez v. New York, supra,* 500 U.S. at page 356.

[11] *Hernandez v. New York, supra,* 500 U.S. at page 356.

[12] *Hernandez v. New York, supra,* 500 U.S. at page 361.

correctly recognized the close connection between the prosecutor's proffered reasons for excusing these two jurors and an issue in the trial—the ability of the Spanish-speaking jurors to accept the interpreter's version of the witnesses' testimony. The court also listened and responded when defense counsel argued Juror B stated unequivocally she would follow the court's instruction after the court explained why adherence to the interpreter's translation was so important. While acknowledging Juror B had changed her response after the court's admonition the court pointed out: "The fact is the People were not comfortable with her initial response."

We also conclude substantial evidence supports the trial court's decision to credit the prosecutor's race-neutral reasons for striking Jurors A and B.

In the present case, as in *Hernandez*, the trial court had the opportunity to observe the prosecutor's demeanor just as the prosecutor had the opportunity to observe the demeanor of Jurors A and B.[13] Furthermore, in this case, as in *Hernandez*, "the prosecutor defended [her] use of peremptory challenges without being asked to do so by the judge . . . ."[14] Both of these factors "could be taken as evidence of the prosecutor's sincerity."[15]

There are additional factors in the present case which support the prosecutor's credibility. As previously noted, the prosecutor's grounds for excluding Jurors A and B were closely related to the case being tried.[16] Further, the prosecutor's reasons were based on objective factors—the jurors' answers to the questions posed on voir dire—rather than subjective factors such as the jurors' "body language,"[17] dress,[18] appearance of stress[19] or questionable inferences based on their lifestyle or occupation.[20] The defense also excused jurors who waffled on their ability to restrict themselves to the interpreter's

---

[13] *Hernandez v. New York, supra*, 500 U.S. at page 369.

[14] *Hernandez v. New York, supra*, 500 U.S. at page 369.

[15] *Hernandez v. New York, supra*, 500 U.S. at page 370.

[16] *People v. Ervin* (2000) 22 Cal.4th 48, 74–75 [91 Cal.Rptr.2d 623, 990 P.2d 506].

[17] See *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1125 [124 Cal.Rptr.2d 373, 52 P.3d 572].

[18] See *People v. Allen* (2004) 115 Cal.App.4th 542, 551 [9 Cal.Rptr.3d 374].

[19] *People v. Gutierrez, supra*, 28 Cal.4th at page 1124.

[20] In *People v. Young* (2005) 34 Cal.4th 1149, 1174 [24 Cal.Rptr.3d 112, 105 P.3d 487] the prosecution challenged V.S., an African-American female, who worked as an insurance claims specialist and sometimes "assisted defense attorneys in preparation for litigation and arbitration." Writing for the court, former Justice Brown suggested "the prosecutor might reasonably have challenged V. S. on the basis that she might be overly *defense oriented* . . . ." (*Ibid.*, italics added.)

Spanish translation.[21] Moreover, Juror A's failure to ever commit herself to the interpreter's translations was sufficient cause for the trial court to have excused her on its own motion if the prosecution had not done so first.[22] Finally, the fact Juror B ultimately agreed to abide by the trial court's instruction does not show the prosecutor was insincere in her reason for excusing her. In *Hernandez* the Supreme Court upheld the lower court's finding regarding the prosecutor's credibility even though the two challenged jurors finally answered they would follow the interpreter's translation.[23]

To be sure, there are things in the record which might arguably support a finding the prosecutor was insincere in her proffered reasons for excusing Jurors A and B. The prosecutor's purported doubt the jurors would follow the interpreter's translation, even after the trial court's firm admonition they must do so, contradicts one of the basic tenets of our system of trial by jury which is frequently cited by attorneys for the People—the presumption jurors " 'generally understand and faithfully follow instructions.' [Citations.]"[24] In *Hernandez* the prosecutor based his peremptory challenges on "the specific responses *and* the demeanor of the two individuals."[25] The prosecutor in our case did not cite any specific aspect of the jurors' demeanor which led her to doubt the credibility of their ultimate promise to follow the trial court's instruction.[26] Finally, the fact the prosecutor did not question Juror F about the ability to accept the translations given in court is some, albeit in this case slight, evidence of the prosecutor's intent to discriminate against Hispanics.[27]

A finding of substantial evidence, however, does not require or imply a finding of no contrary evidence. Here the trial court concluded the prosecutor had put forth a valid, race-neutral reason for excluding Jurors A and B and that this was the prosecutor's true reason, not a mere pretext to cover up intentional discrimination against Hispanics. We find no basis for disturbing either conclusion.

---

[21] See discussion of Jurors D and E, above.

[22] If the trial court finds a juror is "unable to perform his or her duty, . . . the court may order the juror to be discharged." (Pen. Code, § 1089.)

[23] *Hernandez v. New York, supra,* 500 U.S. at page 357, footnote 1.

[24] *People v. Smith* (2007) 40 Cal.4th 483, 517–518 [54 Cal.Rptr.3d 245, 150 P.3d 1224].

[25] *Hernandez v. New York, supra,* 500 U.S. at page 360. (Italics added.)

[26] Cf. *Hernandez v. New York, supra,* 500 U.S. at page 356. (In answering the prosecutor's questions whether they would follow the interpreter's translations " '[t]hey each looked away' " from the prosecutor and answered with " 'some hesitancy' ").

[27] *People v. Bell* (2007) 40 Cal.4th 582, 597 [54 Cal.Rptr.3d 453, 151 P.3d 292]. Given the fact the prosecutor questioned all the other potential jurors who stated they spoke Spanish it seems likely the prosecutor simply overlooked Juror F.

## II. *THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT IMPOSED THE UPPER TERM SENTENCE BASED ENTIRELY ON FACTS NOT FOUND BY THE JURY.*

In *Apprendi v. New Jersey*[28] and *Blakely v. Washington*[29] the United States Supreme Court set out a bright-line rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[30] In its original opinion in *People v. Black*[31] our Supreme Court held California's determinate sentencing law did not violate the rule announced in *Apprendi* and *Blakely.*

On the authority of *Black I* the trial court sentenced Cardenas to the upper term of five years for the robbery based on the court's own determination the robbery involved the aggravating factors of "planning" and "sophistication."[32]

Following Cardenas's sentencing, the United States Supreme Court overruled *Black I* in *Cunningham v. California*[33] which held California's determinate sentencing law violated the defendant's Sixth Amendment right to a jury trial for the same reason as the state sentencing schemes struck down in *Apprendi* and *Blakely:* the law "authorizes the judge, not the jury, to find the facts permitting an upper term sentence."[34]

Because the trial court had relied solely on facts that must be found by a jury to impose the upper term on Cardenas and based on *Cunningham*, this court filed an opinion reversing the upper term sentence and remanded to the trial court. Before that decision was final, however, the California Supreme Court issued its second opinion in the *People v. Black* prosecution. In this opinion (*Black II*), our high court held the presence of a prior conviction which requires no jury finding makes a defendant "eligible" for an upper term sentence thus justifying the court's use of other aggravating

---

[28] *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 120 S.Ct. 2348].

[29] See *Blakely v. Washington* (2004) 542 U.S. 296, 301 [159 L.Ed.2d 403, 124 S.Ct. 2531].

[30] The court has also recognized an exception when the facts supporting an upper term are admitted by the defendant. (*Blakely v. Washington, supra*, 542 U.S. at p. 303.) This exception does not apply to this case.

[31] *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] (*Black I*).

[32] California Rules of Court, rule 4.421(a)(8).

[33] *Cunningham v. California, supra*, 549 U.S. 270 [127 S.Ct. 856].

[34] *Cunningham v. California, supra*, 549 U.S. at page ___ [127 S.Ct. at page 871].

factors when deciding whether to impose a high term sentence.[35] As a result, we vacated our initial opinion and granted rehearing in order to incorporate *Black II* into our discussion of the validity of the upper term sentence in the particular context of this case. Before reaching that issue, however, we first address the People's contention Cardenas waived any claim of sentencing error.

### A. *The Error Was Not Waived.*

■ The People contend Cardenas waived or forfeited any *Apprendi-Blakely-Cunningham* error because he did not object to his sentence on Sixth Amendment grounds in the trial court. This argument lacks merit because at the time of Cardenas's sentencing *Black I* was the "law of the land" of California, and under the rule of *Auto Equity*[36] the trial court had no choice but to follow it. A criminal defendant cannot be deemed to have waived or forfeited a legal argument which was not recognized at the time of his trial.[37]

### B. *The Trial Court Erred When It Imposed the Upper Term Based Solely on Its Own Factual Determination the Crime Involved "Planning" and "Sophistication" Without Considering Appellant's Prior Misdemeanor Convictions.*

At the sentencing hearing the People urged the trial court to impose the upper term for three reasons: Cardenas induced others to participate in the commission of the crime, Cardenas occupied a position of leadership in its commission, and the manner in which the crime was committed indicated planning and sophistication.[38] The People, however, did not mention Cardenas's prior criminal record, such as it was, as a reason for elevating his sentence above the middle term. At the sentencing hearing, the trial court speculated the victim might be "somewhat mentally retarded" and, therefore, particularly vulnerable.[39] Defense counsel pointed out there was no evidence Konopka was retarded and suggested he might simply be a person who talks slowly. The court ultimately concluded the argument Cardenas induced others to participate in the crime was "not a very persuasive argument." "The main

---

[35] *Black II, supra,* 41 Cal.4th at page 813.

[36] *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].

[37] *Black II, supra,* 41 Cal.4th at pages 810–812.

[38] California Rules of Court, rule 4.421(a)(4), (5), (8).

[39] See California Rules of Court, rule 4.421(a)(3).

argument that is persuasive," the court found, "is that there was a planning, there was sophistication, because there was retaliation for a conduct done by [the victim]. . . . It took [Cardenas] at least a month or two to think about it, plan it, and then execute it."

The United States Supreme Court held "[e]xcept for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' "[40] Thus, the only aggravating factors the trial court considered and the one it relied on when elevating Cardenas's sentence to the high term clearly were constitutionally deficient under *Cunningham* and its predecessors. Moreover, on appeal, the parties agree Cardenas had no prior felony convictions, and the record reflects his few prior misdemeanor convictions were neither proposed by the prosecutor nor mentioned by the trial court as a ground for imposing the upper term.[41] Accordingly, unless *Black II* is interpreted to uphold upper term sentences based solely on improper factors merely because the defendant's record included a couple of prior misdemeanor convictions the prosecution did not even propose to the trial court as an aggravating factor, nor the trial court consider, this sentence must be reversed.

In the initial briefing, the People argued the "prior conviction" exception to the rule means the mere *existence* of two or more prior convictions provides the trial court with the *authority* to impose the upper term sentence on defendant and therefore the Sixth Amendment is not implicated even if the court ultimately chooses not to base the upper term on the priors but chooses instead to base it on facts which were not determined by the jury. In *Black II* the California Supreme Court was not forced to confront this issue in its naked form. In that case, unlike *Cunningham*, the trial court had cited the defendant's prior criminal record which included two felony convictions along with several misdemeanor convictions along with the other factors as grounds for imposing the high term.[42] Thus, it had no reason to confront directly the issue whether unmentioned convictions, to say nothing of unmentioned *misdemeanor* convictions, were enough to "authorize" an upper term sentence and support imposition of such a sentence based entirely on a constitutionally infirm factor. For reasons explained below, we conclude the

---

[40] *Cunningham v. California, supra,* 549 U.S. at page ___ [127 S.Ct. at page 868], quoting *Apprendi v. New Jersey, supra,* 530 U.S. at page 490.

[41] See California Rules of Court, rule 4.421(b)(2) (prior convictions "numerous or of increasing seriousness").

[42] *Black II, supra,* 41 Cal.4th at page 818.

unmentioned convictions in this case failed to save this upper term sentence and thus reverse and remand to the trial court to reconsider its sentencing decision.

First, the language of *Black II* strongly suggests the trial court must have at least *relied* on the defendant's prior criminal record as *one* of its reasons for imposing the high term before it can be considered as making that defendant "eligible" for the high term and thus "authorizing" that elevation of the sentence and allowing the trial court to use otherwise constitutionally infirm factors in deciding to do so. After emphasizing the point the United States Supreme Court "consistently has stated that the right to a jury trial does not apply to the fact of a prior conviction,"[43] our high court could have merely pointed out the defendant had a number of prior convictions and held that fact alone made him "eligible" for a high term sentence. Instead, however, the court went to great pains to demonstrate the trial court had relied on those prior convictions as part of the justification for imposing the high term sentence.

As our Supreme Court explained: "The trial court stated it considered not only the circumstances of the crime but also the other aggravating circumstances set out in the district attorney's sentencing brief. In that brief, the prosecutor listed the aggravating circumstance described in California Rules of Court, rule 4.421(b)(2) as one of the aggravating circumstances applicable in this case. The probation report did likewise. [That section] specifies that it is an aggravating circumstance that 'defendant's prior convictions . . . are numerous or of increasing seriousness.' The probation report reflected that defendant had been convicted of three misdemeanors in May of 1992 (second degree burglary . . . , theft . . . , and receiving stolen property . . .) and that he also had suffered two felony convictions in September of 1996 (grand theft . . . and burglary . . .). These convictions are both numerous and of increasing seriousness. . . ."[44]

In a footnote to the above paragraph, our high court goes to further lengths in reconciling the prosecutor's sentencing brief with the trial court's discussion at the sentencing hearing as well as the probation report. Once again the court underscored the fact the trial court had expressly relied on the defendant's prior convictions as part of its justification for imposing the high term. This further explanation apparently was occasioned by the fact "[t]he district

---

[43] *Black II, supra,* 41 Cal.4th at page 818, citing *Cunningham v. California, supra,* 549 U.S. at page ___ [127 S.Ct. at page 868].

[44] *Black II, supra,* 41 Cal.4th at page 818, citations omitted.

attorney's brief [only mentioned] '. . . defendant has two previous felony convictions from 1996, one for a grand theft and one for a commercial burglary.' "[45] The Supreme Court found the omission of the defendant's other three convictions from the district attorney's report to be irrelevant, because they were mentioned in the probation report. "On appellate review, a *trial court's reasons for its sentencing choice* are upheld if 'supported by available, appropriate, relevant evidence.' [Citations.] The trial court is presumed to have read and considered the probation report. [Citation.] Its conclusion that defendant's prior convictions were numerous or of increasing seriousness is supported by the probation report, whose recitation of defendant's criminal history was not challenged by defendant in the trial court."[46]

■ In the case before this court, while Cardenas's prior convictions and juvenile adjudications may have been included in the probation report, they were not cited in the prosecutor's sentencing brief nor, of critical importance, were they mentioned by the trial court as an aggravating factor warranting Cardenas receive a high term sentence. Nothing in *Black II* suggests the mere fact one or more prior convictions repose, unnoticed or disregarded by the trial court, in the probation report is enough to make the defendant "eligible" for a high term sentence within the meaning of that opinion. To the contrary, the *Black II* opinion stresses the information about prior convictions contained in the probation report and the district attorney's brief serves only to support the trial court's "conclusion" the defendant's prior criminal history constitutes the aggravating factor—or one of the aggravating factors—the court found justified imposing a high term sentence on a defendant. As the Supreme Court emphasized, "[o]n appellate review, [it is the] trial court's reasons for its sentencing choice"[47] that are examined, and the evidence supporting that reason or reasons—not evidence it either rejected or ignored.

■ There is another reason for finding the unmentioned prior convictions cannot save the high term sentence the trial court imposed in this case. As repeatedly discussed above, the trial court never mentioned Cardenas's prior convictions in explaining why it was sentencing him to the upper term. Penal Code section 1170, subdivision (b) and rule 4.406(a) and (b) of the California Rules of Court require the trial court to state on the record its reasons for imposing the upper term.[48] Thus, if the court intended to rely on defendant's prior convictions it had to say so on the record. The fact the trial

---

[45] *Black II, supra,* 41 Cal.4th at page 818, footnote 7.

[46] *Black II, supra,* 41 Cal.4th at page 818, footnote 7, italics added.

[47] *Black II, supra,* 41 Cal.4th at page 818, footnote 7.

[48] Penal Code section 1170, subdivision (b) states in part: "The court shall set forth on the record the reasons for imposing the term selected . . . ." California Rules of Court, rule 4.406(b)(4) requires the trial court, in selecting a term other than the middle term, to give a statement of its reasons and rule 4.406(a) requires the court to "state [on the record] in simple language the primary factor or factors that support the exercise of discretion . . . ."

court could have hypothetically imposed the upper term without committing error begs the question whether the court committed error in imposing the upper term in the way it did. In other words, establishing what punishment is available by law and setting a specific punishment within the bounds of that law are two different things.[49] It is not for the appellate court to conjure the reasons the trial court could have recited to support its sentencing decision from the many options listed in the statutes and court rules. We review the trial court's reasons—we do not make them up.

## C. *The Trial Court's Error Was Prejudicial.*

■ An appellate court may find harmless the imposition of an upper term based on factors which should have gone to the jury if the court can say beyond a reasonable doubt that had the factors been submitted to the jury, the jury would have found them true.[50]

Here the trial court did not rely on a mix of factors in sentencing Cardenas to the upper term. It relied exclusively on its finding the crime involved "planning" and "sophistication." While a jury *could* have found the crime involved planning and sophistication we cannot say beyond a reasonable doubt it would have done so. Cardenas could have been brooding for months about how to get even with Konopka for costing him his job but only decided on the spur of the moment, when he saw Konopka on the street, to rob him. Cardenas might have been at his former employer's business to try to get his old job back, not to rob Konopka. Furthermore, if this robbery was planned it was planned badly and was certainly not sophisticated. Cardenas and Konopka knew each other yet Cardenas did not try to disguise his identity. On the contrary, just in case Konopka did not recognize him Cardenas told Konopka he was taking his wallet in retaliation for him "ratting" on Cardenas at work. Furthermore, the robbery took place in broad daylight in front of Konopka's workplace where there were likely to be witnesses who would recognize Cardenas as a former employee.

For all of the above reasons, the sentence must be vacated and the matter remanded for resentencing as set forth in the Supreme Court's decision in *People v. Sandoval.*[51]

---

[49] See *Apprendi v. New Jersey, supra,* 530 U.S. at page 519 (conc. opn. of Thomas, J.).

[50] *Washington v. Recuenco* (2006) 548 U.S. 212 [165 L.Ed.2d 466, 126 S.Ct. 2546, 2551–2553]; *People v. Sandoval* (2007) 41 Cal.4th 825, 838–839 [62 Cal.Rptr.3d 588, 161 P.3d 1146].

[51] See *People v. Sandoval, supra,* 41 Cal.4th at pages 846–853.

## DISPOSITION

The conviction is affirmed. The sentence is vacated and the cause remanded to the trial court with directions to conduct a new sentencing hearing and sentence Cardenas in accordance with law.

Perluss, P. J., and Zelon, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 16, 2008, S158137.