[No. C054743. Third Dist. July 30, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
SERGIO JAVIER VASQUEZ GONZALES, Defendant and Appellant.

## Counsel

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Alice Su, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**CANTIL-SAKAUYE, J.**—Defendant Sergio Javier Vasquez Gonzales was found guilty by a jury of two counts of robbery. (Pen. Code, § 211.)[1] The jury found true the special allegation that defendant personally used a firearm in the commission of the robberies. (§ 12022.53, subd. (b).) The jury found defendant not guilty of assault with a deadly weapon, but guilty of the lesser included misdemeanor offense of assault. (§ 240.) The jury acquitted defendant of making criminal threats and the trial court granted defendant's motion for acquittal of a third robbery.

The trial court sentenced defendant to a total prison term of 17 years four months.

---

[1] Hereafter, undesignated statutory references are to the Penal Code.

Defendant's sole contention on appeal is the claim the trial court erred in denying his *Batson/Wheeler*[2] motion. Agreeing with defendant's claim, we shall reverse the judgment.

## FACTUAL BACKGROUND

The facts underlying defendant's offenses are not necessary to the sole issue on appeal. Basically, the jury found defendant went into the ampm market in Tracy in August 2005, pretended to buy a soda, and when the cashier opened the cash drawer to give defendant change, defendant pointed a gun in her face and grabbed cash from the drawer. On August 22, 2005, defendant went into the Mi Esperanza Market in Tracy, confronted the cashier and told her to give him money. Defendant had a gun in his hand. Defendant grabbed a handful of cash from a cashbox. The cashier lunged at defendant and struggled with him. Defendant hit the cashier. Other employees came to the cashier's aid and eventually defendant was subdued and held on the ground by the employees and owner of the store until the police arrived.

## DISCUSSION

Defendant claims the prosecutor violated his constitutional right to equal protection by exercising peremptory challenges in a racially discriminatory fashion during jury selection. (*Batson, supra,* 476 U.S. 79 [90 L.Ed.2d 69]; *Wheeler, supra,* 22 Cal.3d 258.)

A. *Background*

During voir dire, the prosecutor exercised his first four peremptory challenges to Prospective Jurors J.C., M.F., S.C., and F.R., all with Hispanic surnames. Defendant objected pursuant to *Batson, supra,* 476 U.S. 79 [90 L.Ed.2d 69].[3] Outside the presence of the jury, defense counsel contended all of the peremptory challenges made by the prosecutor were to Hispanic individuals and that the prosecutor appeared to be systematically eliminating Hispanics from the jury. The trial court found a prima facie case and asked the prosecutor to give his reasons for disqualifying the four prospective

---

[2] *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] (*Wheeler*).

[3] We conclude defendant's objection below based on *Batson* was sufficient to allow him to argue on appeal error under both *Batson* and *Wheeler* because a motion under either raises the same factual inquiries and application of the same legal standards. (See *People v. Yeoman* (2003) 31 Cal.4th 93, 117–118 [2 Cal.Rptr.3d 186, 72 P.3d 1166] [*Batson* claim not forfeited in the trial court when defendant only cited *Wheeler*].)

jurors, although it noted Prospective Juror F.R. looked "like he'll be a terrible juror for both sides" and that "I would have gotten rid of [him] myself."

The prosecutor stated his reasons for excusing each of the prospective jurors. The trial court accepted those reasons and denied defendant's motion.

Defendant now claims the trial court erred in accepting the prosecutor's reasons for challenging two of the four prospective jurors, Prospective Juror J.C. and Prospective Juror F.R. We focus on the voir dire of those two prospective jurors.

### Prospective Juror J.C.

During the initial voir dire by the trial court, Prospective Juror J.C. stated his name, that he "clear[s] power lines for PG&E," and that his answer was "no" to the court's written questions Nos. 2 through 7. The court's written questions Nos. 2 through 7 asked for: 2. The occupation of anyone with whom the juror had a significant personal relationship and the occupation of any adult children; 3. Whether the prospective juror knew any attorneys or staff in the district attorney's office or public defender's office; 4. Whether the prospective juror knew any of the witnesses or parties in this case; 5. Whether the prospective juror had heard about this case; 6. Whether the prospective juror had previously served on a jury; and 7. Whether there was any reason the prospective juror could not be fair to both sides. There was no further individual questioning of Prospective Juror J.C.[4]

When asked his reason for exercising a peremptory challenge to J.C., the prosecutor stated J.C. "was young; he had no significant ties as far as spouses, children. [¶] As far as experiences with what I'm particularly looking for in a juror, I don't believe he possessed those qualities." The prosecutor also noted J.C. was Spanish speaking. "As [defense counsel] brought out during his questioning of the jurors, you know, it does raise an issue when you have interpreters and you're going to have witnesses using interpreters. I believe it poses a problem as far as witnesses [*sic*][5] listening to actually what is being said versus what is being interpreted at that point."

---

[4] On our own motion we ordered the record augmented to include the jury questionnaires for the panel of prospective jurors summoned for defendant's trial. (Cal. Rules of Court, rule 8.155(a)(1).) The clerk of the trial court responded that jury questionnaires are not always used in San Joaquin County and that jury questionnaires were not filled out in this case. The trial court and parties, therefore, had no information about any of the prospective jurors other than what was developed on voir dire.

[5] We agree with appellant it is likely the prosecutor misspoke and that he meant to say "jurors" might have a problem listening.

The prosecutor's comments referred to a portion of defense counsel's earlier voir dire of the prospective jurors in which defense counsel explained defendant spoke both Spanish and English, but had chosen to have an interpreter in order to make sure he understood every word of the English spoken during the trial. Defense counsel asked if any of the jurors had a problem with defendant making such a choice. Defense counsel then asked for a show of hands of the prospective jurors who understood Spanish. "Quite a few" raised their hands[6] and defense counsel proceeded to explain that if a witness testified in Spanish, they would be required to accept the English translation provided by the interpreter for the witness and not use their own skills to translate the testimony.[7] Defense counsel asked if any of them would have a problem following an instruction to that effect. The record does not reflect any response other than a couple of questions posed by Prospective Juror R.B. and Prospective Juror S.C.

Subsequent to defense counsel's questions, the prosecutor again asked the prospective jurors, as a group, whether they would have a problem "tuning out what the witness actually says until it comes through the interpreter?" He explained there were several witnesses that would probably have interpreters. Only Prospective Juror R.B. spoke up. She said she thought she would listen to both the Spanish and the English interpretation.[8] All other prospective jurors shook their heads, apparently in the negative, when asked again if there was going to be a problem.

In response to the prosecutor's stated reasons for challenging Prospective Juror J.C., defense counsel responded that the prosecutor did not "speak at all as far as I know with [J.C.] He didn't inquire of anything with him. He indicates that he didn't have the life experiences that he wanted, but there was absolutely no questioning by counsel of [J.C.] [¶] The reason he was disqualified, I submit, is that he was Spanish speaking, and that, Your Honor, is definitely a protected class. . . . People raised their hands who spoke Spanish, and counsel has singled them out to disqualify them."

*Prospective Juror F.R.*

In response to the initial voir dire questions posed by the trial court, Prospective Juror F.R. stated only his name and that his answer was "no" to

---

[6] Later comments by defense counsel indicate there were five prospective jurors who raised their hands to signify they understood Spanish.

[7] It is misconduct for a juror to rely on his or her own translation instead of the interpreter's translation. (*People v. Cabrera* (1991) 230 Cal.App.3d 300, 303–304 [281 Cal.Rptr. 238].)

[8] Prospective Juror R.B., who does not have a Hispanic surname, was excused for cause by the trial court based on a financial hardship after the resolution of defendant's *Batson/Wheeler* motion.

the remaining questions. The prosecutor subsequently asked Prospective Juror F.R. if he was currently employed. F.R. responded "Yeah." He said he worked for Mar Fence. The prosecutor asked whether he was married or single and F.R. said he was single.

When asked his reason for exercising a peremptory challenge to Prospective Juror F.R., the prosecutor stated F.R. was in baggy pants, was single, and he appeared thoroughly bored with the proceedings. His outward appearance suggested he had no real interest in being there. "In addition, he was also Spanish speaking, not that that is the sole reason for excluding him."

Defense counsel believed Prospective Juror F.R. did not present "any colorful reason" for being excused. He stated it was "unconstitutional to disqualify people because they're Hispanic or because they speak Spanish. [¶] The persons that [the prosecutor] disqualified didn't state any problem with accepting the translation. I questioned the jurors on this, and none of them objected to accepting the translation. The only juror who raised any possible theoretical questions was [Prospective Juror R.B.]."

*The Trial Court's Conclusion*

The trial court commented it was uncertain if language was a cognizable protected group. The court stated: "It's race, color, religion, sex, national origin, but speaking a language, I don't—I mean, the issue here has been raised as to whether or not jurors are going to be able to listen to the interpreter as opposed to what the witnesses say."

The court went on to find Prospective Juror F.R. was clearly bored, which was "clearly not a racially motivated challenge." As to the two challenged jurors, including Prospective Juror J.C., the court stated it was "not quite as clear, but I do not find that there was a racial motivation for the exclusion of those jurors by [the prosecutor]. Also I would note we have approximately six remaining Hispanics on this panel or not the panel but, I mean, on the group—the 12 jurors, and just looking at the group of jurors on the panel as a whole, it would be virtually impossible for a D.A. to exclude Hispanics peremptorily, but in any case, I do not find that the challenges were made for—out of a racial motive." The trial court said it accepted the prosecutor's reasons and denied defendant's motion.

The prosecutor subsequently exercised peremptory challenges to two more prospective jurors with Hispanic surnames. Defendant did not make any further objection or motion under *Batson/Wheeler.*

B. *Analysis*

Defendant argues the trial court erred in denying his motion pursuant to *Batson, supra,* 476 U.S. 79 [90 L.Ed.2d 69] and *Wheeler, supra,* 22 Cal.3d 258. By excusing Prospective Jurors J.C. and F.R. because they spoke Spanish, defendant claims the prosecutor violated defendant's rights to equal protection and to a jury drawn from a representative cross-section of the community.

■ "The applicable law is well settled. '[Under *Wheeler,*] [a] prosecutor's use of peremptory challenges to strike prospective jurors on the basis of group bias—that is, bias against "members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds"—violates the right of a criminal defendant to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the state Constitution. [Citations.] [Under *Batson,*] [s]uch a practice also violates the defendant's right to equal protection under the Fourteenth Amendment. [Citations.]

■ " 'The United States Supreme Court has recently reaffirmed that *Batson* states the procedure and standard trial courts should use when handling motions challenging peremptory strikes. "First, the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' [Citations.] Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes. [Citations.] Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.' [Citation.]" ' " (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1104 [63 Cal.Rptr.3d 297, 163 P.3d 4] (*Zambrano*), quoting *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1008–1009 [47 Cal.Rptr.3d 467, 140 P.3d 775], quoting *Johnson v. California* (2005) 545 U.S. 162, 168 [162 L.Ed.2d 129, 125 S.Ct. 2410]; see *Snyder v. Louisiana* (2008) 552 U.S. ___, ___ [170 L.Ed.2d 175, 180–181, 128 S.Ct. 1203]; *Johnson v. California, supra,* 545 U.S. at p. 168 [162 L.Ed.2d 129, 138].) The same three-prong test has been endorsed by our Supreme Court for proof of state constitutional claims. (*People v. Bell* (2007) 40 Cal.4th 582, 596 [54 Cal.Rptr.3d 453, 151 P.3d 292].)

On appeal, " '[w]e review the trial court's ruling on purposeful racial discrimination for substantial evidence. [Citation.] It is presumed that the prosecutor uses peremptory challenges in a constitutional manner. We defer to the court's ability to distinguish "bona fide reasons from sham excuses." [Citation.] As long as the court makes "a sincere and reasoned effort to

evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal." ' " (*Zambrano, supra,* 41 Cal.4th at p. 1104, quoting *People v. Lewis and Oliver, supra,* 39 Cal.4th at p. 1009; see *People v. Ervin* (2000) 22 Cal.4th 48, 74–75 [91 Cal.Rptr.2d 623, 990 P.2d 506].) But deference is not abdication: " 'When the prosecutor's stated reasons are both inherently plausible and supported by the record, the trial court need not question the prosecutor or make detailed findings. But when the prosecutor's stated reasons are either unsupported by the record, inherently implausible, or both, more is required of the trial court than a global finding that the reasons appear sufficient.' " (*People v. Stevens* (2007) 41 Cal.4th 182, 193 [59 Cal.Rptr.3d 196, 158 P.3d 763], quoting *People v. Silva* (2001) 25 Cal.4th 345, 386 [106 Cal.Rptr.2d 93, 21 P.3d 769]; see *People v. Williams* (1997) 16 Cal.4th 153, 189–190 [66 Cal.Rptr.2d 123, 940 P.2d 710].)

■ Defendant complains here that the fact Prospective Jurors J.C. and F.R. spoke Spanish is not a race-neutral reason for excluding them and that the challenges cannot be saved based on the prosecutor stating other nondiscriminatory reasons for the challenges. We agree as to Prospective Juror J.C. and therefore, do not need to consider the claim in detail as to Prospective Juror F.R. (*Snyder v. Louisiana, supra,* 552 U.S. at p. ___ [170 L.Ed.2d at p. 181].) "Since the day the seminal decisions in *Wheeler* and *Batson* were each decided, it has been clearly understood that the unconstitutional exclusion of even a single juror on improper grounds of racial or group bias requires the commencement of jury selection anew, or reversal of the judgment where such error is established on appeal. [Citations.]" (*People v. Reynoso* (2003) 31 Cal.4th 903, 927, fn. 8 [3 Cal.Rptr.3d 769, 74 P.3d 852]; see *People v. Granillo* (1987) 197 Cal.App.3d 110, 123 [242 Cal.Rptr. 639].)

In *Hernandez v. New York* (1991) 500 U.S. 352 [114 L.Ed.2d 395, 111 S.Ct. 1859] (*Hernandez*), a prosecutor exercised peremptory challenges to two bilingual Hispanic jurors in a trial featuring Spanish-speaking witnesses because the jurors expressed some hesitation about accepting the court interpreter's translations as authoritative. (*Id.* at p. 356 [114 L.Ed.2d at pp. 403–404].) The defendant argued the challenges based on the jurors' ability to speak Spanish were not race neutral since the jurors' bilingual skills bore a close relation to their ethnicity. (*Id.* at p. 360 [114 L.Ed.2d at p. 406].) The Supreme Court concluded it did not need to address this argument because "the prosecutor did not rely on language ability without more, but explained that the specific responses and the demeanor of the two individuals during *voir dire* caused him to doubt their ability to defer to the official translation of Spanish-language testimony." (*Ibid.,* fn. omitted.) As stated by the prosecutor, the basis for the peremptory challenges was race neutral. "[T]he challenges rested neither on the intention to exclude Latino or

bilingual jurors, nor on stereotypical assumptions about Latinos or bilinguals. The prosecutor's articulated basis for these challenges divided potential jurors into two classes: those whose conduct during *voir dire* would persuade him they might have difficulty in accepting the translator's rendition of Spanish-language testimony and those potential jurors who gave no such reason for doubt. Each category would include both Latinos and non-Latinos." (*Id.* at p. 361 [114 L.Ed.2d at p. 407].)

Once a race-neutral basis for the exercise of peremptory challenges has been offered, the trial court has the duty to determine if the defendant has proved purposeful discrimination. (*Batson, supra,* 476 U.S. at pp. 97–98 [90 L.Ed.2d at pp. 88–89]; *Hernandez, supra,* 500 U.S. at p. 363 [114 L.Ed.2d at p. 408]; *Zambrano, supra,* 41 Cal.4th at p. 1104.) The Supreme Court in *Hernandez* deferred to the trial court's decision on the ultimate question of discriminatory intent because the trial court took a permissible view of the evidence in crediting the prosecutor's explanation. (*Hernandez, supra,* at pp. 364–369 [114 L.Ed.2d at pp. 408–412].)

However, the Supreme Court in *Hernandez,* in its plurality opinion, offered this caution: "Our decision today does not imply that exclusion of bilinguals from jury service is wise, or even that it is constitutional in all cases. It is a harsh paradox that one may become proficient enough in English to participate in trial [citation], only to encounter disqualification because he knows a second language as well." (*Hernandez, supra,* 500 U.S. at p. 371 [114 L.Ed.2d at p. 413] (plur. opn. of Kennedy, J.).) While not resolving the issue, the Supreme Court stated: "We would face a quite different case if the prosecutor had justified his peremptory challenges with the explanation that he did not want Spanish-speaking jurors. It may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis." (*Ibid.*)

In *People v. Cardenas* (2007) 155 Cal.App.4th 1468 [66 Cal.Rptr.3d 821], the Second District Court of Appeal, Division Seven, followed *Hernandez, supra,* 500 U.S. 352 [114 L.Ed.2d 395], in rejecting a claim the prosecutor exercised group bias in violation of *Wheeler* by excusing two Spanish-speaking Hispanic prospective jurors because he distrusted their ability to accept the interpreter's version of witnesses' testimony. (155 Cal.App.4th at pp. 1475–1477.) Each of the two challenged prospective jurors was individually questioned regarding his or her ability to follow the interpretation given by the certified interpreter and had expressed some hesitancy. (*Id.* at pp. 1472–1474.) After carefully considering the record, the appellate court

found substantial evidence supported the trial court's finding that "the prosecutor had put forth a valid, race-neutral reason for excluding [the two jurors] and that this was the prosecutor's true reason, not a mere pretext to cover up intentional discrimination against Hispanics." (*Id.* at p. 1477.)

In contrast, in this case, there was no individual questioning of each of the prospective jurors who identified themselves as able to understand Spanish, and as a group they indicated they did not have a problem with accepting the interpreter's translation of testimony given in Spanish. Only Prospective Juror R.B. and Prospective Juror S.C. raised any questions about the requirement that they rely only on the official translation of testimony given in Spanish. Interestingly, the prosecutor did not justify his peremptory challenge to Prospective Juror S.C. on the basis of her questions or responses. He justified his challenge to her in part on her late return to court from the break. And the prosecutor never challenged Prospective Juror R.B., the only juror who actually indicated she would *not* be able to tune out what the witness actually says and listen only to the interpretation. The record does not reflect the ethnicity of R.B., but her surname is not Hispanic. Thus, it appears the prosecutor, through the exercise of his first four peremptory challenges, eliminated the clearly Hispanic Spanish-speaking prospective jurors, leaving Prospective Juror R.B. as the only juror who understood Spanish.

The prosecutor here did not justify his exercise of a peremptory challenge to Prospective Juror J.C. based on his particular demeanor or body language during the relevant questioning and group response. In fact, the prosecutor referenced only defense counsel's discussion of the language issue, not *any* particular jurors' response to that issue. The prosecutor then simply cited his general belief that there could be a problem when testimony was given by Spanish-speaking witnesses through an interpreter.

If the prosecutor had based his challenge to Prospective Juror J.C. on J.C.'s specific responses or reasonable inferences therefrom or if the prosecutor had described J.C.'s demeanor as the basis for the challenge, then his "Spanish-speaking" reason might have been a race-neutral justification under *Hernandez, supra,* 500 U.S. at page 361 [114 L.Ed.2d at p. 407]. (*People v. Cardenas, supra,* 155 Cal.App.4th at p. 1477.) Instead, in the absence of any other evidence, this aspect of the prosecutor's stated basis expressed only "stereotypical assumptions about Latinos or bilinguals." (*Hernandez, supra,* 500 U.S. at p. 361 [114 L.Ed.2d at p. 407]; see *People v. Calvin* (2008) 159 Cal.App.4th 1377, 1388 [72 Cal.Rptr.3d 300] [if prosecutor had dismissed African-American jurors based merely on assumptions regarding their attitudes, defendant would have demonstrated unconstitutional group-based discrimination].) On this record we are unable to conclude that the prosecutor's

challenge to Prospective Juror J.C. based on Spanish-speaking jurors' issues with interpreters, was race neutral.

Indeed, on this record, the stated basis is strongly suspicious of being a ruse for excusing those persons who may be perceived as more closely identifying with their national origin and/or their Hispanic ethnicity, i.e., those who still speak Spanish. Given the prosecutor's systematic elimination of all Hispanic Spanish speakers, the fact there remained other Hispanics [apparently non-Spanish speakers] on the jury and on the panel does not in this case provide a sufficient inference of race neutrality. (See *People v. Guerra* (2006) 37 Cal.4th 1067, 1108 [40 Cal.Rptr.3d 118, 129 P.3d 321], disapproved on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151 [74 Cal.Rptr.3d 454, 180 P.3d 224] [fact that the jury included members of group allegedly discriminated against may be considered a factor indicating good faith in the exercising of peremptories].) We conclude the prosecutor's "Spanish-speaking" justification was unconstitutionally racially based.

The prosecutor's other reasons for challenging Prospective Juror J.C. also do not change our opinion. The prosecutor first explained he excused J.C. because he "was young; he had no significant ties as far as spouses, children. [¶] As far as experiences with what I'm particularly looking for in a juror, I don't believe he possessed those qualities."

██ Youth and a corresponding lack of life experience can be a valid race-neutral basis for a peremptory challenge. (*People v. Sims* (1993) 5 Cal.4th 405, 430 [20 Cal.Rptr.2d 537, 853 P.2d 992] ["youthful college student with insufficient maturity to accept the responsibility involved in serving on a death-penalty case" and a juror who was "very young and appeared immature"]; *People v. Perez* (1994) 29 Cal.App.4th 1313, 1328 [35 Cal.Rptr.2d 103] [single college students without significant life experience]; *U.S. v. Ferguson* (7th Cir. 1991) 935 F.2d 862, 865 [young and unemployed].) The problem with the prosecutor's statement here, however, is that it was implausible in light of its lack of support in the record.

While we accept as true the assertion that J.C. was young since defendant did not challenge the prosecutor's statement, we note the record does not disclose Prospective Juror J.C.'s age. A wide range of ages may arguably fall within the general characterization of "young." Moreover, what was significant about Prospective Juror J.C.'s youth, as expressed by the prosecutor, was his corresponding lack of maturity expressed through the absence of his marital and parental relationships and other life experiences. But nothing in the record supports such a conclusion.

During voir dire, Prospective Juror J.C. gave only his name and occupation. His occupation was clearing utility lines. Nothing in the nature of such

employment suggests it was not a responsible, permanent, possibly career, position. J.C. then stated his answer was "no" to the trial court's general questions. By such response, J.C. did not state an occupation of any "significant other" or any adult children, but he was not asked and he did not state he was single or childless. As there were no jury questionnaires used in this case, nothing else in the record supports the prosecutor's statement that Prospective Juror J.C. was single and childless. The prosecutor did not ask Prospective Juror J.C. any individual questions about any life experiences. The prosecutor did not ask him any individual questions at all. The prosecutor did not explain, nor did the trial court ask him to explain, what specific life experiences he was looking for in a juror or that he found Prospective Juror J.C. lacked.

Thus, the prosecutor's stated reasons were substantially unsupported by the record and implausible, particularly when considered in light of the prosecutor's statement of a reason that was not race neutral.

■ We recognize that as long as the court makes " ' "a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal." ' " (*Zambrano, supra,* 41 Cal.4th at p. 1104, quoting *People v. Lewis and Oliver, supra,* 39 Cal.4th at p. 1009; see *People v. Ervin, supra,* 22 Cal.4th at pp. 74–75.) " 'But when the prosecutor's stated reasons are either unsupported by the record, inherently implausible, or both, more is required of the trial court than a global finding that the reasons appear sufficient.' " (*People v. Stevens, supra,* 41 Cal.4th at p. 193, quoting *People v. Silva, supra,* 25 Cal.4th at p. 386.) The trial court must carefully evaluate the reasons given in light of the whole record and ask, when necessary, probing questions. (*People v. Silva, supra,* at pp. 385–386; *People v. Fuentes* (1991) 54 Cal.3d 707, 714–715 [286 Cal.Rptr. 792, 818 P.2d 75].) The trial court here did not sufficiently question and evaluate the prosecutor's exercise of his peremptory challenges. The trial court's ultimate determination that the prosecutor's challenge to Prospective Juror J.C. was not racially motivated is unreasonable in light of the evidence of the voir dire proceedings. (*People v. Silva, supra,* at p. 385.)

■ The prosecutor's challenge of Prospective Juror J.C. violated defendant's right to equal protection and right to a jury drawn from a representative cross-section of the community as one of the prosecutor's stated reasons for excusing Prospective Juror J.C. was not race neutral. We shall reverse the judgment and remand for a new trial. (*People v. Reynoso, supra,* 31 Cal.4th at p. 927, fn. 8; *Wheeler, supra,* 22 Cal.3d at p. 283; *Batson, supra,* 476 U.S. at p. 100 [90 L.Ed.2d at p. 90].)

## DISPOSITION

The judgment is reversed and the matter is remanded for a new trial.

Davis, Acting P. J., and Morrison, J., concurred.