Filed 2/9/23  P. v. Andrade CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B313650 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA063875) |
| v. | |
| MATTHEW ANDRADE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charles A. Chung, Judge.  Sentence vacated with directions.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Matthew Andrade appeals from the judgment following his no contest plea to human trafficking (Pen. Code, § 236.1, subdivision (b))[1] and other charges related to an incident where he restrained an individual against her will while his confederate robbed and threatened to kill her. The trial court sentenced Andrade to concurrent upper terms on each of his convictions.

While Andrade's appeal was pending, the Legislature amended section 1170, subdivision (b), to require the trial court to impose a sentence that does not exceed the middle term unless the defendant stipulates to the facts supporting circumstances in aggravation or a jury or a judge in a court trial finds those facts true beyond a reasonable doubt. Andrade argues the trial court abused its discretion in imposing upper terms by improperly weighing the aggravating and mitigating factors. He also argues, in supplemental briefing, he is entitled to resentencing under the new legislation. We agree with Andrade's second argument, vacate his sentence, and direct the trial court to resentence Andrade under amended section 1170, subdivision (b).

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Andrade Commits Multiple Crimes*

In the summer of 2014 Lisa L., who worked as an escort, met James Jackson in the laundry room of her apartment complex. Jackson told Lisa he recognized her from an advertisement on an adult services platform Lisa used to solicit clients. Jackson later sent Lisa several text messages stating she

---

[1]    Statutory references are to the Penal Code.

should work for him and allow him to be her pimp. Lisa refused and said she wanted to work for herself. The tone of the text messages began to "escalate," and Jackson accused Lisa of stealing his clients and said she owed him money. In one of the text messages, Jackson threatened to take Lisa "out to the desert" and kill her. Lisa blocked text messages from Jackson's phone.

On the evening of August 1, 2014 Lisa received a text message from someone she did not recognize, asking for an appointment. Lisa sent her address, and a few hours later Andrade appeared at her front door. Lisa led Andrade through her living room and up the stairs to her bedroom, where Andrade gave her $200, the agreed-upon price. Lisa noticed the money "was fake." As she reached for her cell phone to call her boyfriend, she "got hit" with "a hard, metal-like object" in the back of her head. She felt "lightheaded" and fell to the floor. When she regained consciousness, her hands were cuffed behind her back. Andrade pulled out a "fake badge" and told Lisa she was under arrest. Andrade dragged Lisa down the stairs, put her on the couch, and pinned her down. Andrade made a phone call and said, "I got the girl." Two minutes later, Jackson walked into Lisa's apartment. He searched through Lisa's wallet and then switched positions with Andrade, leaning on Lisa to prevent her from getting up. Lisa felt a cold metal object against the back of her head; Jackson told her he was going to kill her and take her out to the desert.

When Jackson and Andrade went to the front door to check whether the hallway was clear for them to escape, Lisa ran out through the back door to the patio and screamed. A neighbor came to help her call the police. Lisa told the police officer who

3

responded that Andrade hit her in the back of the head with the barrel of the gun. Lisa suffered a fractured wrist from the incident.

The People charged Andrade with, among other crimes, kidnapping to commit robbery (§ 209, subd. (b)(1); count 1), first degree residential robbery (§ 211; count 2), human trafficking with the intent to pimp or pander (§ 236.1, subd. (b); count 3), making a criminal threat (§ 422, subd. (a); count 4), assault with a deadly weapon (§ 245, subd. (a)(1); count 7), conspiracy to commit murder (§ 182, subd. (a)(1); count 8), and assault with a firearm (§ 245, subd. (a)(2); count 9). On counts 1, 2, and 8 the People alleged Andrade personally used a firearm, within the meaning of section 12022.53, subdivision (b), and on count 9 the People alleged Andrade personally used a firearm, within the meaning of section 12022.5.

### B. *Andrade Pleads No Contest, and the Trial Court Sentences Him*

A jury trial commenced in the fall of 2016. Lisa and the police officer who responded to the 911 call testified about the events of August 1, 2014. Andrade testified in his defense and described the incident in a way that minimized his culpability.

According to Andrade, Jackson told him that Lisa worked for him as a prostitute, that she owed him money, and that she stopped talking to him. Andrade testified Jackson said that he was going to send Lisa a text message asking for an escort appointment and that Andrade would pose as the client. Andrade said that at first he refused to participate in the plan, but that he eventually agreed because he "was under duress." Pursuant to Jackson's instructions, Andrade purchased handcuffs

4

from a sporting goods store. Andrade stated that on the way to Lisa's apartment Jackson gave him a toy gun.

Andrade testified that, once he arrived at Lisa's apartment, he followed Lisa upstairs and gave her two fake 100 dollar bills Jackson had given him. Andrade stated that when Lisa looked at the bills she told him that she could not "see" him. Andrade said he pulled out his police identification, told Lisa that she was under arrest, and instructed her to put her hands behind her back. Andrade stated that Lisa began to slap and hit him and that he tried to defend himself by handcuffing her. Andrade testified he walked Lisa downstairs, called Jackson, and opened the door for Jackson to come into the apartment. According to Andrade, Lisa recognized Jackson and screamed for both men to get out. Andrade stated that he told Jackson they should leave and that, as they walked out, Jackson took Lisa's identification and cell phone from the kitchen table. Andrade denied he used a gun, hit Lisa, or dragged her down the stairs.

At the close of evidence, Andrade agreed to a negotiated disposition of the case. The People agreed to amend the information to change count 1 from kidnapping to commit robbery (§ 209, subd. (b)(1)) to kidnapping (§ 207, subd. (a)), dismiss the conspiracy to commit murder charge (count 8), and add to counts 3 and 4 an allegation a principal used a firearm in the commission of the crimes, within the meaning of section 12022.53, subdivision (b).[2] Andrade agreed to plead no contest to all the charges and to admit the firearm allegations, and the parties agreed the court would impose a prison sentence between

---

[2]     At a subsequent hearing, the parties agreed the firearm allegation for the human trafficking charge (count 3) should be changed to section 12022.5, subdivision (a).

zero years and 40 years four months, based on argument at a sentencing hearing the court would hold in a month. Andrade pleaded no contest to the charges as amended and admitted the firearm allegations.

Due to the COVID-19 pandemic and other circumstances, one month became almost five years, and on September 24, 2021 the trial court held the sentencing hearing. Counsel for Andrade asked the court to consider several mitigating factors, including Andrade's military service, other employment history, and lack of a criminal record. The prosecutor argued that, based on a policy directive from the new District Attorney, the People could ask for no more than a 20-year prison sentence.

The court found three aggravating circumstances: (1) "There was extreme sophistication involved. The defendant posed as an officer, utilized a badge, handcuffs, and a gun."; (2) "There was extreme violence involved, pistol-whipping at one point. The victim was forced to kneel before the defendant with her back toward him. His feet were on the back of her knees holding her in place. The gun was put to the back of her skull, and it looked pretty much like an execution-style situation."; "On top of that," the court continued, (3) Andrade's experience as a peace officer and a member of the armed forces was "a factor to consider in terms of culpability and responsibility" (although the court also said Andrade's military service "weighs into sentencing . . . both ways"). The court imposed the upper term of 20 years on count 3 and imposed and stayed, under section 654, execution of a term of 10 years for the firearm enhancement.[3]

---

[3] Section 12022.5, subdivision (c), provides the "court may, in the interest of justice pursuant to Section 1385 and at the time of

6

The court imposed the upper term on each of the remaining counts, plus 10-year terms for the firearm enhancements, all concurrent to the sentence imposed on count 3.  Andrade timely appealed.[4]

## DISCUSSION

### A.    *Applicable Law*

When the trial court sentenced Andrade in 2021, section 1170, subdivision (b), provided:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."  (Stats. 2020, ch. 29, § 14; see *People v. Flowers* (2022) 81 Cal.App.5th 680, 684, review granted Oct. 12, 2022, S276237; *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1108 (*Zabelle*).)  Effective January 1, 2022, the Legislature amended section 1170, subdivision (b), to provide:

---

sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."  Section 12022.5, subdivision (c), does not authorize the court to impose and stay execution of the enhancement.  On remand the trial court must impose (without staying execution of), strike, or dismiss the enhancement (see *People v. Brewer* (2014) 225 Cal.App.4th 98, 104; *People v. Lopez* (2004) 119 Cal.App.4th 355, 364), subject to the limitations in amended section 1170.1, subdivision (d) (Stats. 2021, ch. 731, § 1.3).

[4]    Andrade's notice of appeal did not state his appeal is based on grounds that arose after entry of the plea and that do not affect the plea's validity, as required under California Rules of Court, former rule 8.304(b)(4)(B).  We granted Andrade's motion to amend his notice of appeal to include that statement.

"(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2). [¶] (2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Stats. 2021, ch. 731, § 1.3; see *Zabelle*, at p. 1108; *People v. Whitmore* (2022) 80 Cal.App.5th 116, 131.) The court, however, "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

The Legislature amended section 1170, subdivision (b), "to limit the sentencing discretion of trial courts" and to "potentially lessen punishment for defendants sentenced to the upper term on an offense." (*Zabelle*, *supra*, 80 Cal.App.5th at pp. 1108, 1109.) Andrade argues, the People concede, and we agree he is entitled to the ameliorative benefit of the amended statute. (See *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 308 ["'in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not'"]; *People v. Dunn* (2022) 81 Cal.App.5th 394, 403 [defendant was "entitled to the benefit of" the amendments to section 1170, subdivision (b), because "her

8

case was not final" on the effective date of the amendments], review granted, Oct. 12, 2022, S275655; *Zabelle*, at p. 1108.)[5]

### B. *The Trial Court's Sentence Did Not Comply with Amended Section 1170, Subdivision (b), and the Error Was Not Harmless*

Andrade contends, the People concede, and we agree the trial court's imposition of upper terms violated the Sixth Amendment and did not comply with amended section 1170, subdivision (b).[6] Andrade did not stipulate to, and a jury did not find beyond a reasonable doubt, the facts underlying the three

---

[5] The People assert Andrade forfeited his argument the trial court erred in imposing upper term sentences because he "did not raise any of the grounds he now raises in this appeal." The amendments to section 1170, subdivision (b), however, did not become effective until after the trial court sentenced Andrade. Andrade did not forfeit, by failing to make, an argument existing law did not yet support. (See *People v. Perez* (2020) 9 Cal.5th 1, 7-8 [""[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence""].)

[6] The Supreme Court has granted review in *People v. Mitchell*, (2022) 83 Cal.App.5th 1051, review granted November 14, 2002, S277314, to decide whether the amendments to section 1170, subdivision (b), that limit a trial court's discretion to impose upper term sentences apply retroactively to defendants sentenced pursuant to stipulated plea agreements. The People do not argue the amendments do not apply to Andrade because he was convicted pursuant to a plea; to the contrary, as stated, the People concede the new law applies to him.

aggravating circumstances the court relied on to impose the upper terms. (See *Cunningham v. California* (2007) 549 U.S. 270, 281 ["any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence"]; *Zabelle, supra*, 80 Cal.App.5th at pp. 1109, 1111 ["the trial court's imposition of the upper term based on its own factfinding violated defendant's rights under the Sixth Amendment," and the trial court erred in relying upon facts "that were not found true in the manner section 1170 now prescribes"].)

The People argue that "any error under *Cunningham* and newly amended section 1170, subdivision (b) was harmless." We cannot reach that conclusion.

The Supreme Court has granted review in *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted August 10, 2022, S274942, to decide what standard of prejudice applies on appeal when determining whether a case should be remanded for resentencing in light of the amendments to section 1170, subdivision (b). Until the Supreme Court decides the issue, we use the test articulated by the court in *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*) and reformulated by the courts in *Zabelle, supra*, 80 Cal.App.5th 1098 and *People v. Wandrey* (2022) 80 Cal.App.5th 962 (*Wandrey*), review granted Sept. 28, 2022, S275942.

"The denial of the right to a jury trial on aggravating circumstances is reviewed under the harmless error standard set forth in" *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824 (*Chapman*). (*People v. Sandoval* (2007) 41 Cal.4th 825, 838 (*Sandoval*); see *Zabelle, supra*, 80 Cal.App.5th at p. 1110;

10

*Wandrey*, *supra*, 80 Cal.App.5th at p. 981, review granted.) If a reviewing court concludes, "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*Sandoval*, at p. 839; see *People v. Dunn*, *supra*, 81 Cal.App.5th at p. 408, review granted; *Zabelle*, at p. 1111.)

Whether a violation of section 1170, subdivision (b), is harmless is an issue of state law we review under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*People v. Ross* (2022) 86 Cal.App.5th 1346, 1354; *Zabelle*, *supra*, 80 Cal.App.5th at p. 1110; *Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.) In *Lopez* the court held that sentencing error under amended section 1170, subdivision (b), is harmless if the reviewing court "can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied," other than those related to the defendant's prior convictions, and that otherwise the reviewing court must determine whether it is reasonably probable the "trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied." (*Lopez*, at p. 467 & fn. 11.) In *Zabelle* the court restated this test as follows: If the trial court relied on more than one aggravating circumstance, we must determine "for each aggravating fact . . . whether it is reasonably probable that the jury would have found the fact not true" and "then, with the aggravating facts that

11

survive this review, . . . whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts." (*Zabelle*, at p. 1112;[7] see *Wandrey*, *supra*, 80 Cal.App.5th at p. 982 [even if the trial court properly relied on one aggravating factor to support imposing an upper term, the reviewing court must ask "whether the trial court would have exercised its discretion in the same way if it had been aware of the statutory presumption in favor of the middle term"]; see also *People v. Dunn*, *supra*, 81 Cal.App.5th at p. 410 [stating another formulation of the harmless error test under section 1170, subdivision (b)], review granted.)

The constitutional and statutory violations were not harmless here. As discussed, the trial court cited three aggravating circumstances that justified imposing upper terms: The crimes involved great violence, Andrade's conduct indicated sophistication, and Andrade's service in the military and employment with law enforcement made him more culpable. We cannot conclude under either the *Chapman* or *Watson* standard a jury would have found true beyond a reasonable doubt any of these aggravating circumstances. The first two circumstances involve "somewhat vague or subjective" standards that require "an imprecise quantitative or comparative evaluation of the facts," making it difficult for a reviewing court "to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*Sandoval*, *supra*, 41 Cal.4th at p. 840; see *People v.*

---

[7] The court in *Zabelle* stated that its "quibble with *Lopez* is a very minor one" and that the two approaches "are the same in terms of outcomes." (*Zabelle*, *supra*, 80 Cal.App.5th at p. 1113.)

12

*Ross*, *supra*, 86 Cal.App.5th at p. 1355; *Wandrey*, *supra*, 80 Cal.App.5th at p. 983.)

While the trial court found Andrade's conduct in using a badge, handcuffs, and a gun to pose as a peace officer indicated extreme sophistication, it is reasonably probable a jury would find his conduct was not all that sophisticated. Andrade testified he went into Lisa's apartment with a toy gun and handcuffs he purchased at a sporting goods store; a jury could easily find that using these rudimentary props reflected the planning of amateurs, not sophisticated criminals. In addition, the plan unraveled as soon as Andrade and Jackson took their eyes off Lisa and she escaped to the patio. (See *Wandrey*, *supra*, 80 Cal.App.5th at p. 983 [while "it may seem intuitively obvious that [the defendant] abused a position of trust, this is less true as to . . . whether [his] offenses indicated planning"; "[s]ome degree of speculation would necessarily be required for us to conclude the jury would have agreed with the trial court's evaluation"], review granted; *People v. Cardenas* (2007) 155 Cal.App.4th 1468, 1483 ["While a jury *could* have found the crime involved planning and sophistication we cannot say beyond a reasonable doubt it would have done so."].)

Nor can we say it is reasonably probable a jury would find beyond a reasonable doubt Andrade's conduct involved great violence, which, like sophistication, requires a subjective and comparative evaluation of the facts. (See *People v. Ross*, *supra*, 86 Cal.App.5th at p. 1354 ["whether the crime involved *great violence*" under California Rules of Court, rule 4.421(a)(1), requires a "subjective evaluation"]; see also *Sandoval*, *supra*, 41 Cal.4th at p. 849 [examples of inherently vague and subjective potential aggravating circumstances include whether "'[t]he

13

victim was *particularly* vulnerable,' whether the crime 'involved a[ ] . . . taking or damage of *great* monetary value' or whether the 'quantity of contraband' involved was '*large*'"].)  While the ordeal undoubtedly was frightening, Lisa's only injury was to her wrist.

Moreover, contrary to the People's assertion, the evidence relating to these two circumstances was not "overwhelming and uncontested."  Andrade testified Jackson came up with the idea to commit the crime and forced him to participate in it.  Although Andrade later admitted firearm-use allegations for purposes of the negotiated disposition, at trial he denied he used a gun, hit Lisa, or dragged her down the stairs.  (See *People v. Kerley* (2018) 23 Cal.App.5th 513, 530 ["testimony of a single witness, if believed by the factfinder, is sufficient to prove any fact"].)  And the jury made no findings because Andrade pleaded no contest before the jury returned a verdict.

The court's third aggravating circumstance, Andrade's military service and law enforcement background, was not a valid aggravating circumstance because it was not reasonably related to the court's decision to impose appropriate terms of imprisonment.  (See *Sandoval*, *supra*, 41 Cal.4th at p. 840 ["aggravating circumstances not set forth in rules or statutes" must be "'reasonably related to the decision being made'"]; *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1196 ["a trial court is free to base an upper term sentence upon any aggravating circumstance that (1) the court deems significant and (2) is reasonably related to the decision being made"]; California Rules of Court, rule 4.421(c) [trial court may consider factors "statutorily declared to be circumstances in aggravation or which reasonably relate to the defendant or the circumstances under

14

which the crime was committed"].)[8]  Although the trial court stated it was not holding Andrade to a higher standard because he had served in the armed forces or worked in law enforcement, the court proceeded to do just that, finding that "very high standards are promulgated to those who enter those fields" and that "we do rightfully expect more from people in those professions."  Andrade's service to his country in the army and his service to fellow citizens as a peace officer were not circumstances a trial court or a jury could use to impose upper terms.  (See *People v. Black* (2007) 41 Cal.4th 799, 817 ["[a]n aggravating circumstance is a fact that makes the offense 'distinctively worse than the ordinary'"]; *People v. Hicks* (2017) 17 Cal.App.5th 496, 512 [same].)

C.     *The Trial Court Must Resentence Andrade*

Where, as here, the trial court's failure to comply with amended section 1170, subdivision (b), is not harmless, the reviewing court must direct the trial court to resentence the defendant under the amended statute.  (See *People v. Ross*, *supra*, 86 Cal.App.5th at p. 1356 [to give the amendments to section 1170, subdivision (b), "full effect, a remand for resentencing is appropriate"]; *Zabelle*, *supra*, 80 Cal.App.5th at p. 1115 [remand for resentencing was appropriate where the reviewing court could not determine whether the trial court would have imposed the same sentence had it been left with four aggravating circumstances instead of eight].)  Therefore, Andrade is entitled to a full resentencing.  (See *People v. Buycks* (2018)

---

[8]     Contrary to the People's assertion, the trial court did not find Andrade's "use of his status as a police officer" was an aggravating circumstance.

5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances'"]; *People v. Jones* (2022) 79 Cal.App.5th 37, 46 ["the need to apply amended section[ ] 1170, subdivision (b) . . . creates sufficiently '"changed circumstances"' [citation] to warrant a full resentencing," which includes determining "whether to impose an upper, middle, or lower term, and whether to impose concurrent or consecutive sentences"]; *People v. Garcia* (2022) 76 Cal.App.5th 887, 902 ["the trial court may revisit all of its sentencing choices in light of" the amendments to section 1170, subdivision (b)].)

Citing *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*), the People contend that, "should this Court find prejudicial error, the appropriate relief is remand to afford the prosecution and trial court the option of returning to the status quo ante," which the People assert means they should have "an opportunity to withdraw approval for the plea agreement . . . ." In *Stamps* the defendant "entered into a plea agreement for a specified term that included a prior serious felony enhancement," but while his appeal was pending, the Legislature enacted a new law that gave the trial court discretion to strike the enhancement in furtherance of justice. (*Id.* at p. 692.) After concluding the new law applied retroactively to the defendant, the Supreme Court held that, should the defendant seek relief under the new law, "the trial court is not authorized to unilaterally modify the plea agreement by striking the serious felony enhancement but otherwise keeping the remainder of the bargain." (*Id.* at p. 707.) Rather, the Supreme Court stated, unless the prosecution agrees to a downward departure in the sentence, "'the prosecutor is

16

entitled to the same remedy as the defendant—withdrawal of assent to the plea agreement.'" (*Ibid.*)

*Stamps* is distinguishable. Andrade's plea agreement did not provide for a specified term of imprisonment. Andrade pleaded no contest to the amended charges, and the parties agreed to a prison sentence ranging from zero years to 40 years four months. Directing the trial court to resentence Andrade under amended section 1170, subdivision (b), which may result in a shorter prison sentence, would not deprive the People of the benefit of their bargain or give Andrade a "'bounty in excess of that to which he is entitled.'" (*Stamps*, *supra*, 9 Cal.5th at p. 703.) Should the People fail to prove beyond a reasonable doubt the aggravating circumstances to support an upper term on count 3, the court could impose an aggregate sentence between zero years and the 20 years the trial court imposed (and the People asked for) at the last sentencing hearing,[9] which would still fall within the range of prison time specified in the plea agreement (i.e., between zero years and 40 years four months). (See *People v. Henderson* (2021) 67 Cal.App.5th 785, 789 ["striking the enhancement while preserving the plea deal does not deprive the People of the benefit of their bargain" because the sentence "would stay within the range of possible outcomes agreed to by the parties"].) The People do not argue that they

---

[9]     See *People v. Brunton* (2018) 23 Cal.App.5th 1097, 1108 [when a defendant's sentence is legally authorized, the "'original aggregate prison term cannot be *increased* on remand'" following a partially successful appeal]; *People v. Rosas* (2010) 191 Cal.App.4th 107, 109, fn. 1 [same]; see also *People v. Collins* (1978) 21 Cal.3d 208, 216 ["'a defendant should not be required to risk being given greater punishment on a retrial for the privilege of exercising his right to appeal'"].)

17

lost the opportunity to have the court impose a sentence of up to 40 years four months or that they lost the ability to prove aggravating circumstances by a lower standard of proof. They argue only that they are entitled to withdraw their approval of the plea because it "was the result of plea bargaining in which [Andrade] obtained the benefit of a less severe punishment than that which could result if he were convicted of all charged offenses." And even that is not a proper reason for allowing the People to withdraw their approval of the plea because, if the jury convicted Andrade on all counts, he could receive a greater aggregate prison sentence, a result that would effectively penalize Andrade for taking an appeal. (See *People v. Flores* (2022) 77 Cal.App.5th 420, 450 ["a defendant exercising his right to appeal based on an ameliorative change in the law 'should not be penalized . . . by being rendered vulnerable to punishment more severe than under his plea bargain'"], review granted June 22, 2022, S274561.)

## DISPOSITION

The convictions are affirmed, but the sentences are vacated.  The trial court is directed to resentence Andrade in accordance with section 1170, subdivision (b), and any other applicable ameliorative legislation.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.