Filed 4/5/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B325200 |
| Plaintiff and Respondent, | (Super. Ct. No. 22CR04156) |
| | (Santa Barbara County) |
| v. | |
| ISRAEL MARCIAL URIOSTEGUI, | |
| Defendant and Appellant. | |

More than eight decades ago, our high court declared that " 'one who is on trial for an alleged crime is entitled to a jury from which individuals of [their] own race who are otherwise qualified as jurors in the particular case . . . have not been arbitrarily excluded merely because of their nationality, race or color.' " (*People v. Hines* (1939) 12 Cal.2d 535, 539.)  Our Legislature recently enacted Code of Civil Procedure[1] section 231.7 to help eradicate the improper removal of jurors based on their actual or perceived race, ethnicity, gender, or membership in another

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

specified protected group.  Now, certain reasons for removing a juror are presumptively invalid unless the reasons articulated "bear on the prospective juror's ability to be fair and impartial in the case" and the trial court makes such a finding.  (§ 231.7, subds. (e), (f).)  Certain demeanor-based justifications are also presumptively invalid unless the demeanor "matters to the case to be tried" and the justification is independently confirmed by the trial court.  (*Id.*, subd. (g)(2).)

But what if a facially neutral reason given by a party to remove a juror—such as "lack of life experience"—is based on a presumptively invalid reason, such as lack of employment or demeanor?  Absent reasons articulated by the party exercising the peremptory challenge that bear on the prospective juror's ability to be fair and impartial and concern the case to be tried, and without corresponding express findings by the trial court, we hold that such a practice violates section 231.7.

Israel Marcial Uriostegui appeals from the judgment after a jury convicted him of first degree residential burglary.[2]  (Pen. Code, §§ 459, 460, subd. (a).)  The trial court suspended imposition of sentence and placed Uriostegui on two years of formal probation.  Uriostegui contends the trial court erred when it denied his objection pursuant to section 231.7.  We agree, and reverse.

FACTS AND PROCEDURAL HISTORY
*Jury selection*
Uriostegui's jury trial commenced in November 2022. During voir dire, the trial court asked prospective juror T.N. to provide "basic information."  T.N. provided her name, which had

---

[2] The facts underlying defendant's offenses are not necessary to the issues on appeal.

2

a Spanish surname. She said, "I work at Taco Bell" but "I am not currently working because of an injury." She also said she had no military service or prior jury service. She added that she "ha[d] two family members that ha[d] been convicted of a crime, but [was] not close with them."

In response to questioning by Uriostegui's counsel, T.N. stated she would not need the defense "to prove anything," she did not need the defendant to testify to find him not guilty, and it was "perfectly fine" for the defendant to use an interpreter. The prosecutor did not ask T.N. any questions about these issues.

Outside the presence of the other jurors, T.N. disclosed that her mother was convicted of a crime and her father was sent to prison. These convictions occurred about eight years earlier. T.N. told the court that having close family members convicted of crimes would "absolutely not" affect her ability to serve as a juror in this case.

During questioning by the prosecutor, T.N. said she was not close with her biological parents, had been in foster care, and had no feelings about incarceration. What happened to her parents was "definitely" fair under the circumstances. The prosecutor said he had no further questions.

Uriostegui's counsel objected when the prosecutor exercised a peremptory challenge against T.N. Referencing section 231.7, Uriostegui's counsel said the basis for excusing T.N.—"having a close relationship with family members . . . convicted of crimes"— was presumptively invalid (§ 231.7, subd. (e)(3)) and that T.N. "appears to be Hispanic." When asked by the court to explain the basis for excusing T.N., the prosecutor stated:

> "[T.N.] told us that . . . she works at Taco Bell. That she has an [a]ssociates degree in Arts. No military

3

service. That she is not currently working. That she has a significant other but no kids, no prior jury service. I think that People's peremptory was based in a lack of life experience. So the fact that she has no children, seems to—seems very young in—or rather very inexperienced in her presentation of herself. Perhaps appears even younger than she actually is. I think that is attributable to life experience, and to limited ties to the community. I would also note that she appeared very malleable in terms of her answers to questions. That she was agreeable to all of the lines of questioning presented by the Defense, then was equally agreeable to all the lines of questioning presented by the Prosecution. So she appeared kind of reluctant, timid, malleable. Not the kind of person who would independently make a judgment about the facts in a case, come to her own conclusions and not be swayed by her fellow jurors. Her soft-spokeness [*sic*], reluctance and timidity, I think, were apparent to everybody."

The prosecutor also said he had "concerns" about T.N.'s "ability to fully understand" the questions asked during voir dire.

Uriostegui's counsel countered that the prosecutor's demeanor-based objections were presumptively invalid. He added that T.N. "seemed intelligent and to be paying attention, and her answers were logical."

The trial court acknowledged that T.N. "[c]ertainly has potentially a Hispanic last name," but denied the objection because "in light of the totality of circumstances" there was "not a substantial likelihood" that T.N.'s actual or perceived membership in a protected class was a factor in the use of the peremptory challenge. It reasoned, "[W]hile I think there was certainly more questions that could have been asked by both

4

sides, [T.N.] did, based on the questions and based on [the prosecutor's] explanation as to why he exercised the preemptory [*sic*], I don't believe it was a socio-economic one." The court noted T.N.'s age and concluded that "it is reasonable that her . . . lack of life experience is unrelated to conscious or unconscious bias as to that specific juror. I don't believe that his reason for peremptory had anything to do with the fact that she may be Hispanic."

## DISCUSSION

Uriostegui contends the trial court erred when it denied his objection pursuant to section 231.7 because the prosecutor excused T.N. on the ground that "she appear[ed] to be Hispanic." The Attorney General maintains the prosecutor properly excused T.N. because of her " 'lack of life experience,' " which is not a presumptively improper reason under section 231.7. Uriostegui counters that the prosecutor's specific reasons supporting T.N.'s alleged "lack of life experience" are presumptively invalid. We agree with Uriostegui.

### *Section 231.7*

Prior to January 1, 2022, trial courts examined peremptory challenges under the three-step inquiry established by *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*), overruled in part by *Johnson v. California* (2005) 545 U.S. 162. Unlike challenges for cause based on a juror's incapacity, relationship to the parties, bias, or prejudice (see §§ 228, 229), peremptory challenges to excuse potential jurors were "designed to be used 'for any reason, or no reason at all.' " (*People v. Scott* (2015) 61 Cal.4th 363, 387.) Under the prior three-step inquiry, the party objecting to a peremptory challenge had to first demonstrate a prima facie case of discriminatory purpose. (*People v. Lewis and Oliver* (2006) 39

5

Cal.4th 970, 1008-1009.) The burden then shifted to the party exercising the peremptory challenge to provide a permissible, nondiscriminatory explanation. (*Id*. at p. 1008.) The third step required the trial court to decide if "purposeful" discrimination motivated the peremptory challenge. (*Id*. at pp. 1008-1009.) Appellate courts reviewing rulings on these objections presumed that prosecutors properly used peremptory challenges. (*People v. Gonzales* (2008) 165 Cal.App.4th 620, 627.)

While the prior *Batson/Wheeler* inquiry helped eliminate overt intentional discrimination, it "plainly fail[ed] to protect against—and likely facilitate[d]—implicit bias. Implicit bias is increasingly accepted as pervasive throughout the criminal justice system, and it is particularly pernicious in the context of peremptory challenges." (*People v. Bryant* (2019) 40 Cal.App.5th 525, 545 (conc. opn. of Humes, P. J.).) Recognizing this, "the Legislature enacted Assembly Bill No. 3070 (2019-2020 Reg. Sess.) . . . to add . . . section 231.7, which creates new procedures for identifying unlawful discrimination in the use of peremptory challenges." (*People v. Jaime* (2023) 91 Cal.App.5th 941, 943, fn. omitted (*Jaime*).)

In enacting section 231.7, the Legislature acknowledged the impact of cognitive implicit bias on the use of peremptory challenges. (See, e.g., Assem. Conc. Sen. Amends. to Assem. Bill No. 3070 (2019-2020 Reg. Sess.) as amended Aug. 21, 2020, p. 4 ["Instead of permitting any 'facially neutral' reason for a peremptory challenge, this bill disallows reasons that are commonly associated with racial and ethnic groups and women, unless they can be shown to be unrelated to the prospective juror's identity groups"].) It also noted "that it can be difficult and often impossible for the trial judge to determine whether the

6

lawyer making the challenge actually intended to discriminate. Trial courts rarely even require attorneys to present their reasons for excluding a juror, and when reasons are given, judges must rely on a subjective test that requires the court to attempt to determine the actual motivation of the attorney challenging a potential juror.  Thus, even when judges require lawyers to provide reasons for a challenge, both the trial courts and the reviewing courts have been strongly inclined to accept whatever justifications are offered." (See Sen. Com. on Public Safety, Analysis of Assem. Bill No. 3070 (2019-2020 Reg. Sess.) July 28, 2020, p. 7.)

Now, trial courts "need not find purposeful discrimination" to sustain an objection to a peremptory challenge.  (§ 231.7, subd. (d)(1).)  "Instead, 'upon objection to the exercise of a peremptory challenge pursuant to [section 231.7],' the party exercising the peremptory challenge must state the reasons for exercising the challenge.  (§ 231.7, subd. (c).)  Also, certain reasons for a peremptory challenge are presumptively invalid under section 231.7 unless rebutted by clear and convincing evidence that they are unrelated to the prospective juror's perceived membership in a protected group and . . . bear on the juror's ability to be fair and impartial.  (§ 231.7, subd. (e).)" (*Jaime, supra*, 91 Cal.App.5th at p. 943.)  The trial court "shall" also find that presumptively invalid reasons "bear on [the] juror's ability to be fair and impartial in the case."  (§ 231.7, subd. (f).)

Presumptively invalid reasons include the prospective juror's "[l]ack of employment or underemployment."  (§ 231.7, subd. (e)(11).)  Certain demeanor-based reasons for excusing jurors are also now presumptively invalid unless independently confirmed by the trial court and the demeanor "matters to the

7

case to be tried." (§ 231.7, subd. (g)(2); *People v. Ortiz* (2023) 96 Cal.App.5th 768, 794 (*Ortiz*).) These reasons include the "prospective juror exhibit[ing] either a lack of rapport or problematic attitude, body language, or demeanor." (§ 231.7, subd. (g)(1)(B).)

We review de novo the trial court's denial of an objection under section 231.7, and its express factual findings for substantial evidence. (§ 231.7, subd. (j).) But in the absence of express factual findings, including those regarding a prospective juror's demeanor, we cannot impute any findings to the trial court. (*Ibid.*) If we conclude that the court erred in overruling an objection under section 231.7, "the statute precludes a finding of harmless error." (*Ortiz, supra*, 96 Cal.App.5th at p. 795.) An erroneously denied objection "shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (§ 231.7, subd. (j).)

*Analysis*

At the outset, we reject the Attorney General's claim of no error because it was unclear whether T.N. was Hispanic. Uriostegui's counsel objected because T.N. "appears to be Hispanic." Section 231.7 prohibits removal of jurors based on their *perceived* ethnic membership. (§ 231.7, subd. (a).) Moreover, T.N. has a Spanish surname. Our Supreme Court has held that Hispanics "are members of a cognizable class for purposes of *Batson/Wheeler* motions," and exclusion of persons based on a Spanish surname may be impermissible based on association with a cognizable group. (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1156, fn. 2 (*Gutierrez*).)

We also reject the argument that Uriostegui, as the party objecting to the peremptory, must show the number of empaneled

8

jurors who are Hispanic.  Under section 231.7, Uriostegui was not required to make a "comparative analysis argument."  (§ 231.7, subd. (j).)  It is relevant that Uriostegui is also Hispanic. (§ 237.1, subd. (d)(3)(A)(i).)

The prosecutor here exercised a peremptory challenge against T.N. based on her "lack of life experience," reasoning that T.N. was young, worked at Taco Bell, and was not currently employed.  But the trial court did not make any finding that T.N.'s employment status bore on her "ability to be fair and impartial in the case."  (§ 231.7, subd. (f).)  And we cannot "impute to the trial court any findings . . . that [it] did not expressly state on the record."  (§ 231.7, subd. (j).)  To allow a party to bury presumptively invalid reasons under an overarching facially neutral reason, such as "lack of life experience," without the required findings under section 231.7, subdivision (f), would render section 231.7, subdivision (e) ineffective.

We also disagree with the Attorney General's blanket claim that "lack of life experience" is not a presumptively invalid reason for excusing a prospective juror.  Here, because T.N.'s alleged lack of life experience was based in part on the presumptively invalid reason of "lack of employment or underemployment," section 231.7, subdivisions (e) and (f) required the prosecutor to show that it is "highly probable" that an objectively reasonable person aware of implicit bias (§ 231.7, subd. (d)(2)(A)) would view this reason as unrelated to T.N.'s perceived ethnicity.  No such showing was made.  Nor did the prosecution meet its burden to show that T.N.'s lack of employment bore on her "ability to be fair and impartial." (§ 231.7, subd. (e); *People v. Jimenez* (2024) 99 Cal.App.5th 534,

9

544, fn. 3.)

In conjunction with the "lack of life experience" explanation, the prosecutor claimed that T.N.'s demeanor was problematic because she was too "malleable" by agreeing with questions posed by both the defense and the prosecutor. We respectfully disagree. Our review of the record shows that the prosecutor only asked T.N. questions about her family members' convictions, her feelings about their incarceration, and whether she felt comfortable being a juror. And with respect to her responses to questions posed by the defense, T.N. stated that she would not need the defense "to prove anything," the defendant did not need to testify, and it was fine for the defendant to use an interpreter. T.N.'s responses show only that she would follow the law.

The prosecutor also claimed that T.N. was reluctant, timid, and soft-spoken. But these demeanor-based reasons for excusing T.N. are now presumptively invalid because they "have historically been associated with improper discrimination in jury selection." (§ 231.7, subd. (g)(1).) And these reasons were not independently confirmed by the trial court, in violation of section 231.7, subdivision (g)(2).

The prosecutor additionally claimed that T.N. had limited ties to the community. But it is significant that the prosecutor did not question T.N. regarding this issue, which raises an inference of discrimination. (§ 231.7, subd. (d)(3)(C)(i), (ii); *Wheeler*, *supra*, 22 Cal.3d at pp. 280-281.)

Finally, the prosecutor claimed that T.N. did not fully understand the questions being asked. The Attorney General does not offer, and we do not find, a single example in the record to support this claim. On the contrary, T.N. appropriately

10

answered all the questions posed to her.  Moreover, the trial court made no findings to confirm the prosecutor's claim about T.N.'s purported inability to respond to questioning.

*Ortiz*, *supra*, 96 Cal.App.5th 768, on which the Attorney General relies, is not to the contrary.  *Ortiz* held "that the substantial evidence standard applies where . . . the trial court has made explicit findings in the confirmation stage." (*Ortiz*, at p. 801.)  Because the trial court here did not make any findings regarding T.N.'s alleged inability to understand the questions, there are no factual findings to review for substantial evidence. (§ 231.7, subd. (j).)

Under section 231.7, a trial court may overrule an objection to the exercise of a peremptory challenge based on presumptively invalid reasons only if it explicitly makes specific findings.  Here, the prosecutor's reasons and the judicial findings did not overcome the presumption of invalidity.  The court therefore erred in denying Uriostegui's objection under section 231.7.

In reaching this conclusion, we need not, and do not, determine whether the prosecutor was motivated by bias.  The Legislature intended section 231.7 to "be broadly construed to further the purpose of eliminating the use of group stereotypes and discrimination, whether based on conscious or unconscious bias, in the exercise of peremptory challenges." (Stats. 2020, ch. 318, § 1(c).)  And in enacting section 231.7, the Legislature found "that requiring proof of intentional bias renders the procedure ineffective and that many of the reasons routinely advanced to justify the exclusion of jurors from protected groups are in fact associated with stereotypes about those groups or otherwise based on unlawful discrimination." (Stats. 2020, ch. 318, § 1(b).)  The legislation seeks to remedy not only "purposeful

11

discrimination" but implicit unconscious bias as well.  (§ 231.7, subd. (d)(1), (2)(A) & (C).)

*Conclusion*

"[D]ecision-making by racial stereotype . . . should be anathema in our courts."  (*People v. Johnson* (1978) 22 Cal.3d 296, 299.)  "It is not only litigants who are harmed when the right to trial by impartial jury is abridged.  Taints of discriminatory bias in jury selection—actual or perceived—erode confidence in the adjudicative process, undermining the public's trust in courts."  (*Gutierrez, supra*, 2 Cal.5th at p. 1154.)  It is therefore imperative that trial courts heed section 231.7's new mandates to root out discriminatory uses of peremptory challenges.

DISPOSITION

The judgment is reversed, and the case is remanded for a new trial.

CERTIFIED FOR PUBLICATION.

BALTODANO, J.

I concur:

CODY, J.

GILBERT, P. J.

I respectfully dissent.

When patent racial prejudice occurs in any form in our judicial system, the California Racial Justice Act of 2020 requires reversal, even when guilt has been established beyond "beyond a reasonable doubt." In *People v. Simmons* (2023) 96 Cal.App.5th 323, this court reversed a criminal conviction of a Black defendant despite overwhelming evidence of his guilt. The prosecutor's cross-examination and comments during oral argument regarding defendant's skin color compelled reversal under the act.

We reasoned the Legislature's concern that racial prejudice in a court proceeding so infects and pollutes our judicial system that its presence adversely affects a finding of guilt. This, despite the cogent argument raised by Justice Yegan in his dissent in *Simmons* that the Racial Justice Act violates the doctrine of separation of powers. (See *People v. Simmons*, *supra*, 96 Cal.App.5th 323 (dis. opn. of Yegan, J.); Cal. Const., art. VI, § 13.)

I applaud the Legislature's recognition that implicit bias – an unconscious trait we all carry within us whatever our race, background, or life experience – has no place in our judicial system. (See Godsil & Richardson, *Racial Anxiety* (2017) 102 Iowa L.Rev. 2235-2263.) Members of the judiciary and the bar attend courses to raise awareness of these biases. Yet I seriously doubt the majority's literal interpretation of Code of Civil Procedure section 231.7 requires reversal here.[1]

---

[1] All statutory references are to the Code of Civil Procedure.

Uriostegui was caught on a home security camera entering the garage of the victim's residence.  He was apprehended close to the residence when police arrived a short time later.  He matched the description of the individual captured on the security camera and was found in possession of a knife stored in the victim's garage.

At the sidebar proceeding concerning the prosecution's request to exercise a peremptory challenge to the juror in question here (T.N.), defense counsel said, "She appears to be a member – she appears to be Hispanic.  I am concerned it is a presumptively invalid reason."  The prosecutor responded that the People's peremptory challenge was based in part on a lack of life experience.  Defense counsel countered that the prosecution's concerns are "socio-economic," a presumptively invalid reason under section 231.7, subdivision (e)(11).

Although the prosecution relied on a number of reasons for the peremptory challenge, the trial court denied the defense objection solely on the lack of life experience.  The court found there was no "substantial likelihood" that "an objectively reasonable person" would believe "race, ethnicity, gender, gender identity, sexual orientation, national orientation, national origin, or religious affiliation or perceived membership in any of those groups is a factor in the use of the peremptory challenge."

The trial court went on to expressly find that the prosecutor did not exercise his peremptory challenge for the presumptively invalid reason of T.N.'s "socio-economic" circumstances of being unemployed.  The court concluded:  "I think it is reasonable that her lack of, or [the prosecutor's] reasoning for challenge is a lack of life experience is unrelated to

conscious or unconscious bias as to that juror. I don't believe that his reason for [the] peremptory had anything to do with the fact that she may be Hispanic . . . but the court is satisfied that the reason for the peremptory is not invalid pursuant to [section]231.7."

Contrary to the majority's conclusion, in finding that the peremptory challenge was not based on T.N.'s socio-economic status, the trial court necessarily concluded the prosecutor was not using the facially neutral reason of "lack of life experience" to conceal a presumptively invalid reason. (See *People v. Hamilton* (2009) 45 Cal.4th 863, 907 [lack of life experience is a nondiscriminatory and legitimate reason to disqualify a juror].)

This trial judge was aware of the statute and implicit bias. Yet the majority reverses because the judge did not repeat verbatim the words of the statute, i.e., the trial court did not expressly add that the reasons articulated by the prosecution "bear on the prospective juror's ability to be fair and impartial in the case." (§ 231.7, subd. (e).) This is taking literalism into the realm of the absurd. The majority's reading of the statute permits a judge to avoid what the statute intends to prevent by saying the talismanic phrase "I find by clear and convincing evidence the reasons of the prosecutor for the peremptory challenge bear on the prospective juror's ability to be fair and impartial in the case." It escapes me how this statute succeeds in what it seeks to prevent.

While the facts underlying Uriostegui's conviction are not relevant to the issue raised on appeal, they do show overwhelming evidence of guilt. All parties in litigation are entitled to a fair trial. This includes the prosecution. The

3

majority's rote application of section 231.7 defeats this goal.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

Von Deroian, Judge

Superior Court County of Santa Barbara

_____

Andrea Keith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.